**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SANDRA GWEN KIMBROW,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-01137-O-BP** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The Commissioner of Social Security decided Sandra Kimbrow is not entitled to Disability

Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") because she is not disabled.

Kimbrow claims the Commissioner applied incorrect legal standards in reaching this decision by

improperly weighing medical-opinion evidence. Finding no reversible error, the undersigned

**RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the

Commissioner's decision and **DISMISS** this case **with prejudice**.

**I.     BACKGROUND**

In 2013, Kimbrow applied for DIB and SSI under Titles II and XVI of the Social Security

Act ("SSA"), respectively. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 18-1 at 448-57. She

reported several medical conditions that limit her work ability, including bone-spur-related nerve

damage in her neck, arms, hands, and right knee; arthritis; and depression. Tr. 502. The

Commissioner denied Kimbrow's applications initially and upon reconsideration. *Id.* at 243-52,

257-64. Seeking to challenge the Commissioner's denial, Kimbrow requested a hearing before an

Administrative Law Judge ("ALJ") (*id.* at 265-66), who conducted the hearing (*id.* at 110-29) and affirmed the Commissioner's decision in 2015. *Id.* at 189-201.

But because the ALJ's decision did not evaluate three medical opinions as well as evidence of Kimbrow's depression, the Social Security Appeals Council ("AC") vacated the ALJ's decision and remanded for new proceedings. *Id.* at 208-12. A different ALJ conducted a new hearing (*id.* at 79-108), but affirmed the Commissioner's decision again. *Id.* at 214-28. Once more, however, the AC vacated and remanded. *Id.* at 237-40. The same ALJ conducted another hearing (*id.* at 35-77) and again affirmed the Commissioner's decision. *Id.* at 7-24. The AC this time denied further administrative review in 2020. *Id.* at 1-3; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review.").

Kimbrow filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1. She claims the Commissioner's decision "constitutes legal error and is contrary to substantial evidence." ECF No. 21 at 5.

## II.    STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The

claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The ALJ applied correct legal standards and reached a decision substantial evidence supports. *See Leggett*, 67 F.3d at 564. Kimbrow does not challenge the ALJ's findings at steps one through three in the evaluation process, namely that she: (1) "has not engaged in substantial gainful activity since February 2, 2006"; (2) has severe impairments of "degenerative disc disease of the

cervical and lumbar spine; degenerative joint disease of the bilateral knees; degenerative joint

disease of the bilateral shoulders; bilateral carpal tunnel syndrome; obesity; diabetes mellitus; and

major depressive disorder"; and (3) has no impairments or combination of impairments that qualify

under the federal regulatory list. Tr. 13-15.

> Kimbrow challenges the ALJ's RFC determination, set forth below:

> [Kimbrow] has the [RFC] to perform sedentary work as defined in 20 CFR
> [§§] 404.1567(a) and 416.967(a) except she can occasionally balance, stoop, kneel,
> crouch, and climb ramps and stairs, and she can never crawl or climb ladders, ropes,
> or scaffolds. She can frequently reach, handle, finger, and feel with her bilateral
> upper extremities. [She] can understand, remember, and carry out detailed, but not
> complex tasks, and she cannot perform fast-paced or quota-requirement type work.

*Id.* at 15. The ALJ concluded Kimbrow's RFC precluded her from performing PRW under step

four. *Id.* at 22-23. But he concluded it permitted performing jobs that exist in significant numbers

in the national economy under step five, including Receptionist, Appointment Clerk, and

Information Clerk. *Id.* at 23-24. Consequently, Kimbrow was not disabled and entitled to benefits

under the SSA. *Id.* at 24.

Kimbrow contends the ALJ, in reaching his RFC, "failed to apply the correct legal

standards to the opinions from Plaintiff's treating and examining physicians." ECF No. 21 at 11.

Drs. Danica Jordan and Deborah Gleaves authored these opinions (*id.* at 12), to which the ALJ

attached "little" and "partial" weight, respectively. Tr. 20-21. According to Kimbrow, the ALJ

discounted both doctors' opinions "without conducting the detailed analysis under Section

404.1527." ECF No. 21 at 11.

### A.    The ALJ applied proper legal standards in considering Dr. Jordan's opinion.

Kimbrow invokes *Newton v. Apfel*, where the 5th Circuit "conclude[d] that, absent reliable

medical evidence from a treating or examining physician controverting the claimant's treating

specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a

*detailed analysis* of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." 209 F.3d 448, 453 (5th Cir. 2000) (second emphasis added); *see Kneeland v. Berryhill*, 850 F.3d 749, 760 n.52 (5th Cir. 2017) (noting the *Newton* criteria now appear in 20 C.F.R. § 404.1527(c)); *accord* 20 C.F.R. § 416.927(c) (the SSI counterpart). The *Newton* criteria apply only to SSA applications like Kimbrow's that were filed before March 27, 2017, and they favor medical opinions from a claimant's "treating source," with such opinions sometimes deserving "controlling weight" in the ALJ's disability determination. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Newton*, 209 F.3d at 455 ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."). But "[t]he treating physician's opinions are not conclusive" and "may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455-56.

Neither party disputes Dr. Jordan's status as a treating physician whose discredited opinion warrants *Newton*'s detailed analysis. *See* ECF No. 22 at 4. A detailed analysis is nothing more than what SSA regulations already prescribe: the ALJ must "consider" and "apply" a list of six factors and "give good reasons" for assigning the opinion the weight he deems proper. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Jeffcoat v. Astrue*, No. 4:08-cv-672-A, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010) ("*Newton* requires only that the ALJ 'consider' each of the § 404.1527[(c)(2) and 416.927(c)(2)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion."). The six factors are:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

*Emery v. Astrue*, No. 7:07-cv-084-BD, 2008 WL 4279388, at *3 (N.D. Tex. Sept. 17, 2008) (citing

20 C.F.R. § 404.1527). The ALJ need not explicitly discuss each factor, *Burk v. Astrue*, No. 3:07-

cv-899-B, 2008 WL 4899232, at *4 n.1 (N.D. Tex. Nov. 12, 2008), or "recite each factor as a

litany in every case." *Emery*, 2008 WL 4279388, at *5.

The ALJ here did not mention the sixth factor, but doing so was unnecessary, as Kimbrow

does not contend Dr. Jordan is a specialist. *See* ECF No. 21; *Mays v. Bowen*, 837 F.2d 1362, 1364

(5th Cir. 1988) (stating the harmless error rule). He otherwise applied the remaining factors,

beginning first with a summary of Dr. Jordan's opinion:

> I give little weight to the opinion of Danica Jordan, D.O., who found the claimant
> can sit four hours per day, stand and walk one hour, sit 45 minutes at a time, and
> stand 15, with a sit/stand at-will option inadequate to accommodate her pain if
> relegated to a single area rather than allowing her to "walk it off" for five to ten
> minutes. (32F/2-4). Dr. Jordan further found the claimant capable of occasionally
> lifting ten pounds, occasionally reaching, and frequently handling, and found she
> would be off-task more than fifteen minutes per hour, would require frequent
> unscheduled breaks, and would experience more than four absences per month.
> (32F/2-4).

Tr. 20. His analysis proceeded to give two good reasons why the opinion deserves little, instead of

controlling, weight.

The first good reason is the short-term treatment relationship between Dr. Jordan and

Kimbrow. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Applying factors one through three,

the ALJ explained Kimbrow "established care with Dr. Jordan only three months prior to the

formulation of Dr. Jordan's opinion." Tr. 20. And he cited to the doctor's progress notes (*see id.*

at 2769-87), which reveal Kimbrow only visited the doctor twice during the same three-month

period. *See id.* at 20-21, 2769-87; *see also Hanner v. Saul*, No. 4:19-cv-02032, 2020 WL 4043637,

at *3 (S.D. Tex. June 26, 2020) (finding "good cause" for assigning little weight to an opinion

where doctor saw claimant "only four times over the course of approximately two and a half

7

months"), *rec. adopted sub nom. Hanner v. Comm'r of Soc. Sec.*, 2020 WL 4041482 (July 7, 2020); *Holmes v. Astrue*, No. 4:11-cv-305-Y, 2012 WL 2330522, at *6 (N.D. Tex. May 25, 2012) (characterizing a "very short treatment relationship" where doctor had "only one visit" with claimant, "which diminishes the weight" of the doctor's opinion), *rec. adopted*, 2012 WL 2330228 (N.D. Tex. June 19, 2012).

The second good reason the ALJ provided is that the opinion is unsupported by, and inconsistent with, the evidence. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4); *Newton*, 209 F.3d at 456. Applying factors four through five, the ALJ explained the opinion "overstates [Kimbrow's] limitations." Tr. 20. He considered the progress notes from Kimbrow's visits with Dr. Jordan (*see id.* at 2769-87), but found "nothing in the record that indicates [Kimbrow] would be unable to sit for half of a normal workday, nor to support the off-task limitations stated." *Id.* at 20. He found the notes, if anything, supported his RFC determination because Kimbrow "reported she was 'doing well on her current medications' and exhibited normal motor strength and normal gait and station." *Id.* at 20-21 (quoting Tr. 2780, citing Tr. 2785).

Evidence that Kimbrow's impairments "did not reduce her strength during examinations" further rendered Dr. Jordan's opinion inconsistent with the record to the extent the doctor suggested Kimbrow lacked the RFC to perform sedentary work, which requires relatively minimal physical exertion. *See id.* at 20; 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's RFC discussion documented the following substantial evidence of Kimbrow's strength levels: a 2005 physical exam showing she "had full strength and grossly intact sensation in her upper and lower extremities," Tr. 18 (citing Tr. 693); three 2006 exams showing she exhibited "full motor strength in her upper and lower extremities," *id.* at 16 (citing Tr. 692), and "full strength and intact sensation," *id.* (citing Tr. 688, 691); a 2011 exam reporting she "exhibited normal lower extremity

strength and nonantalgic gait," *id.* at 17 (citing Tr. 756); a 2012 physical exam showing she

"exhibited full motor strength," *id.* (citing Tr. 1152); and, again, Dr. Jordan's progress notes from

2015. *Id.* at 18 (citing Tr. 2785).

Kimbrow does not dispute this evidence is at least relevant to her RFC. *See* ECF No. 21

at 12-13. Nor does she identify any other evidence from Dr. Jordan's progress notes to suggest the

ALJ erred in considering them such that, absent the error, he may have reached a different

disability conclusion. *See id.* at 1-17; *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (citing *Frank*

*v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)) ("Harmless error exists when it is inconceivable

that a different administrative conclusion would have been reached even if the ALJ did not err.").

She instead identifies other evidence like her "[d]iagnostic studies" and "spinal surgery" that

indicate the ALJ improperly weighed the progress notes: "Just because a claimant's motor strength

is intact," she claims, "it does not follow that he or she will never be off task or that she can sit for

extended periods of time." ECF No. 21 at 13.

The Court will not reweigh the evidence or substitute its judgment for the ALJ's. *Harris*,

209 F.3d at 417. Just as "[t]he ALJ as factfinder has the sole responsibility for weighing the

evidence," *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991), he also has the "sole responsibility

for determining a claimant's disability status." *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*,

29 F.3d 208, 211 (5th Cir. 1994)); *see also Ripley*, 67 F.3d at 557 ("The ALJ is responsible for

determining an applicant's [RFC]."). The ALJ properly exercised his responsibilities by

considering Dr. Jordan's opinion, its accompanying progress notes, and the entire record, and by

providing two good reasons the opinion should receive little weight.

Kimbrow alternatively contends "the ALJ addressed some, but not all, of the opinions Dr.

Jordan provided." ECF No. 21 at 13. According to her, Dr. Jordan's opinion itself consists of

distinct opinions about her physical and mental functions, each warranting separate *Newton* analysis. *Id.* at 13-14. While she recognizes the ALJ addressed the doctor's opinions on sitting ability and off-task behavior, she maintains the ALJ did not address the doctor's distinct opinions about her abilities to lift/carry, handle, and reach, or the opinion that she would experience four workplace absences per month. *Id.* at 13.

The opinion is in questionnaire format, with the doctor answering thirteen questions about Kimbrow's medical impairments by circling numbers, marking empty boxes, and writing short phrases where prompted. Tr. 2709-11; *see Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (generally disfavoring questionnaire medical opinions). Even assuming each answer required separate *Newton* analyses, the two reasons the ALJ discussed above would extend to each distinct opinion challenged here. Discussing Kimbrow's strength addresses her abilities to lift/carry, handle, and reach, which are "[p]hysical abilities" considered in the RFC determination. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b). And the short-term treatment relationship otherwise provides good reason to discredit the opinion on Kimbrow's likely absenteeism.

Even if the ALJ erred by not expressly addressing each distinct opinion, Kimbrow does not show harmful error. Under the harmless error rule, the Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays*, 837 F.2d at 1364. The claimant must show that, had the ALJ not erred, it is conceivable the ALJ could have reached a different disability conclusion. *Keel*, 986 F.3d at 556.

It is inconceivable the ALJ would have concluded differently had he expressly addressed the potentially distinct opinions of Kimbrow's abilities to lift/carry, handle, and reach. His RFC determination tracks Dr. Jordan's opinion on the first two abilities. Dr. Jordan said Kimbrow could lift/carry up to ten pounds occasionally. Tr. 2710. The RFC limits Kimbrow to sedentary work (*id.*

at 15), which "involves lifting no more than 10 pounds at a time." 20 C.F.R. §§ 404.1567(a),

416.967(a). Dr. Jordan found Kimbrow could frequently handle objects. Tr. 2710. Likewise, the

RFC indicates Kimbrow can "frequently . . . handle." *Id.* at 15. The RFC and opinion diverge on

reaching ability, as the RFC indicates she can frequently reach (*id.*), while Dr. Jordan found

Kimbrow could only occasionally reach (*id.* at 2710). But an RFC adjusted to reflect occasional

reaching still would permit Kimbrow to perform at least one job the ALJ considered at step five.

*See Information Clerk*, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991), 1991 WL 672188

("Reaching: Occasionally - Exists up to 1/3 of the time").

The harmless error analysis is more complex as to the opinion of Kimbrow's predicted

workplace absenteeism. "The major policy underlying the harmless error rule is to preserve

judgments and avoid waste of time." *Mays*, 837 F.2d at 1364. In these proceedings, the ALJ has

issued three decisions unfavorable to Kimbrow since 2015, with the AC vacating and remanding

the first two. *See* Tr. 208-12, 237-40. In fact, the AC vacated the first decision partly because the

ALJ did not evaluate Dr. Jordan's opinion under 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 210. Per

the AC's instructions, the ALJ addressed this issue on remand. *See id.* at 211. It is thus

inconceivable that remanding this case for a third time in six years to address the questionnaire's

specific opinion of Kimbrow's absenteeism—or, for that matter, any other distinct opinion from

the questionnaire Kimbrow may challenge—would result in a different disability conclusion.

Rather, remanding would unnecessarily delay these proceedings.

The Court's review remains "highly deferential" to the ALJ. *Owen v. Kijakazi*, No. 21-

60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022) (quoting *Perez v. Barnhart*, 415 F.3d 457,

464 (5th Cir. 2005)). The ALJ's determination here should be left undisturbed. The ALJ applied

proper legal standards in reviewing Dr. Jordan's opinion, substantial evidence supports the weight

he assigned the opinion, and there is otherwise no harmful error warranting reversal and remand.

> **B.      The ALJ applied proper legal standards in considering Dr. Gleaves's medical opinion.**

Dr. Gleaves, unlike Dr. Jordan, is not Kimbrow's treating physician. ECF No. 21 at 14.

Consequently, her discredited opinion is not entitled to *Newton*'s detailed analysis, *see Newton*,

209 F.3d at 453, as medical opinions from non-treating physicians generally "do not carry the same

'considerable weight.'" *White v. Saul*, No. 4:18-cv-00745-O-BP, 2019 WL 4010240, at *4 (N.D.

Tex. Aug. 26, 2019) (quoting *Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008)). But the

ALJ still must consider the opinion under 20 C.F.R. §§ 404.1527(c), 416.927(c). *See id.* Here, the

ALJ considered Dr. Gleaves's opinion, first by summarizing it:

> I give partial weight to the opinion of consultative examiner Deborah Gleaves, Ph.D., who found the claimant can understand, remember, and carry out one-to-two step instructions, but will struggle with complex instructions during times of increased pain or depression, and would have disruption in sustained concentration and persistence in work-related activities due to pain. (39F/9-13). She further found the claimant less interested in maintaining social interactions, and noted she might possibly be challenged to deal with normal workplace pressures, as she found moderate limitations understanding, remembering, and carrying out complex instructions, making judgment on complex work-related decisions, and responding appropriately to usual work situations and changes in routine work settings. (39F/9-13).

Tr. 21. The ALJ's summary recognizes that Dr. Gleaves is a "consultative examiner" and cites to

Dr. Gleaves's consultative examination report and accompanying medical source statement. *Id.*

(citing Tr. 2813-17); *see* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2) (examining and

treatment relationship factors). He next explained "Dr. Gleaves' opinion is supported by her

examination, and is somewhat consistent with the claimant's intact memory, good eye contact and

cooperative behavior, and good concentration during examinations, but overstates the claimant's

concentration and persistence difficulties, given her performance during such examinations."

Tr. 21; *see* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (supportability and consistency factors).

Kimbrow claims the ALJ "lacks the credentials to say whether [Dr. Gleaves] overstated her account of [Kimbrow's] limitations." ECF No. 21 at 14. But again, determining a claimant's disability status is the ALJ's job, *see Newton*, 209 F.3d at 455 (quoting *Paul*, 29 F.3d at 211), and he does not err in determining unless he reaches a decision that substantial evidence does not support. The ALJ discussed the evidence of Kimbrow's concentration and persistence limits in greater detail during step three, where he noted Kimbrow "exhibited adequate attention and concentration and paid attention to questions during her interview" with a licensed clinical psychologist. Tr. 14 (citing Tr. 1663). Hospital progress notes showed Kimbrow "had good concentration during treatment sessions" on three different occasions. *Id.* (citing Tr. 2823, 2827, 2831). The ALJ explained how even Dr. Gleaves reported Kimbrow "was capable of performing simple calculations during her consultative examination . . . , although she performed serial threes incorrectly." *Id.* (citing Tr. 2810). The ALJ thus relied on substantial evidence indicating Dr. Gleaves overstated Kimbrow's concentration and persistence difficulties. Finally, the ALJ did not mention whether Dr. Gleaves is a specialist, *see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (specialization factor), but Kimbrow similarly does not contend Dr. Gleaves is a specialist. *See* ECF No. 21.

Kimbrow does not otherwise show harmful error. The ALJ gave Dr. Gleaves's opinion "partial weight." Tr. 21. For example, Dr. Gleaves concluded Kimbrow "has adequate intellectual skills to perform most clerical duties or jobs" and that her "academic skills are consistent with her intellectual functioning and adequate with the performance of most clerical type positions." *Id.* at 2812. Accordingly, all jobs the ALJ found Kimbrow could perform at step five were clerical in

nature. *See Receptionist*, DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 1991), 1991 WL 672192; *id.*, *Appointment Clerk*, 1991 WL 672185; *id.*, *Information Clerk*, 1991 WL 672188. And Dr. Gleaves's opinion that Kimbrow has "moderate limitations understanding, remembering, and carrying out complex instructions" (*see* Tr. 21) is consistent with the ALJ's RFC determination, which limits Kimbrow such that she "can understand, remember, and carry out detailed, *but not* complex tasks, and she *cannot* perform fast-paced or quota-requirement type work." *Id.* at 15 (emphases added).

Because the ALJ's decision reflects he considered Dr. Gleaves's opinion under 20 C.F.R. §§ 404.1527, 416.927, and because Kimbrow does not otherwise show harmful error, the ALJ's consideration of Dr. Gleaves's opinion also is sufficient and does not warrant reversal.

## IV.    CONCLUSION

The ALJ applied correct legal standards in considering Drs. Jordan's and Gleaves's medical opinions, and substantial evidence supports the weight he assigned them. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file

specific written objections will bar the aggrieved party from appealing the factual findings and

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc).

      **SIGNED** on February 3, 2022.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE